T. C. Memo. 2014-221

UNITED STATES TAX COURT

ENGSTROM, LIPSCOMB & LACK, APC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27364-12.                    Filed October 20, 2014.

<u>Kevin M. Bagley</u>, for petitioner.

<u>Monica D. Polo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined deficiencies in Engstrom,

Lipscomb & Lack, APC's (petitioner or EL&L) Federal income tax for 2008

through 2010 and accuracy-related penalties under section 6662,[1] as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedures.

**[*2]**

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2008 | $903,979 | $180,796 |
| 2009 | 36,096 | 7,219 |
| 2010 | 306,126 | 61,255 |

Part of the 2008 deficiency resulted from respondent's partial disallowance of a net operating loss petitioner carried forward from 2007. Respondent disallowed travel expense deductions that contributed to the 2007 net operating loss. The Court has no jurisdiction over tax year 2007; however, we can determine the correct amount of the 2007 net operating loss in order to determine the 2008 issue. See, e.g., Jordan v. Commissioner, T.C. Memo. 2009-223, slip op. at 9 n.9, aff'd, 469 Fed. Appx. 460 (6th Cir. 2012). Accordingly, the period from 2008 to 2010 is referred to as the years at issue. The issues presented for our decision are:

(1) whether petitioner is entitled to deductions for travel expenses for the years at issue. We hold that it is entitled to deduct some of the expenses;

(2) whether petitioner is entitled to deduct for 2008 a net operating loss carryforward from 2007 of $1,425,000 that resulted from travel expense deductions. We hold that it is entitled to a portion of that deduction; and

**[*3]** (3) whether petitioner is liable for accuracy-related penalties under section 6662 for the years at issue. We hold that it is, but the penalties must be adjusted for consistency with this opinion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The parties' stipulations of facts are incorporated herein by this reference. When petitioner filed its petition, its principal place of business was in Los Angeles, California.

Petitioner timely filed a petition with this Court requesting a redetermination of the deficiencies and accuracy-related penalties for the years at issue. In his initial answer respondent defended his adjustments on the basis of petitioner's failure to comply with the substantiation requirements in section 274(d). Respondent amended his answer to clarify that he also believes petitioner failed to demonstrate that the claimed deductions were for ordinary and necessary business expenses as required by section 162. Petitioner filed an amended petition asserting its entitlement to additional deductions for travel expenses of $487,000 and $285,000 for tax years 2009 and 2010, respectively, that it had not claimed on its returns.

Petitioner is a tort and commercial litigation law firm that represents individuals, governmental entities, and corporate plaintiffs for incidents occurring

[*4] throughout the United States and internationally.  During the years at issue Walter J. Lack owned 50% of petitioner's shares and served as its president. Thomas V. Girardi, a close friend of Mr. Lack, is the managing partner and 100% owner of Girardi | Keese (GK), a law firm with a tort practice similar to petitioner's.  Mr. Lack and Mr. Girardi have worked as co-counsel on numerous legal cases.

During the years at issue, Mr. Lack and Mr. Girardi had ownership interests in Bicycle Casino, LP; Girardi Financial, LLC; and Oceans 11 Casino, Inc.  Mr. Girardi was a director of Boyd Gaming Corp. and was compensated for his services.  Mr. Lack and Mr. Girardi were also directors of Supergen, a pharmaceutical company, and were compensated for their services.  Petitioner had no ownership interest or involvement in any of the aforementioned activities.

In 1995 Mr. Lack and Mr. Girardi formed G&L Aviation (G&L), a California general partnership that owns aircraft.  Mr. Lack and Mr. Girardi each hold a 50% interest in G&L.  Under G&L's partnership agreement Mr. Lack and Mr. Girardi share equally all the expenses related to the operation of the aircraft. G&L's principal place of business was the same as petitioner's.

During the years at issue G&L owned an American Gulfstream GIV long-range jet aircraft (GIV) and a Raytheon B350 Super King Air turboprop aircraft

[*5] (King Air). Mr. Lack and Mr. Girardi used the aircraft for extensive travel during the years at issue. The GIV was managed by third-party management companies that provided crew, maintenance, repairs, fuel, regulatory compliance, and other services. The third-party management companies were also authorized to charter the GIV when it was not in use by Mr. Lack or Mr. Girardi. Rebekah Herbert, vice president of flight operations and logistics for one of the third-party management companies, determined that the GIV and the King Air would be charged out at approximately $5,500 and $2,500 per hour, respectively. G&L also rented a luxury suite at the Staples Center, a sports arena in downtown Los Angeles. Petitioner was never a partner of G&L, and held no ownership interest in any of G&L's aircraft.

Petitioner claimed travel expense deductions of $1,425,000, $1,157,797, $687,310, and $1,062,469 for tax years 2007, 2008, 2009, and 2010, respectively related to its use of the GIV, the King Air, and the Staples Center luxury suite.[2] Petitioner made payments to G&L totaling $530,000, $347,797, $200,310, and $777,468 for tax years 2007, 2008, 2009, and 2010, respectively. Mr. Lack also

---

[2]The parties agreed, pursuant to the stipulation of facts, that petitioner is not entitled to travel expense deductions for its use of the Staples Center luxury suite. These expenses totaled $22,797, $25,310, and $24,698 in 2008, 2009, and 2010, respectively.

**[*6]** made payments to G&L from his personal account totaling $895,000, $810,000, $487,500, and $285,000 for tax years 2007, 2008, 2009, and 2010, respectively.

There were no written agreements in effect between petitioner and G&L or between petitioner and the third-party management companies regarding the use of the King Air and the GIV. Petitioner maintains, however, that there was an "implied in fact G&L agreement" to make the aircraft available and flight ready for petitioner's business use. Petitioner did not receive invoices for the expenses it and Mr. Lack paid during the years at issue. There were no written shareholder loan agreements between petitioner and Mr. Lack relating to the amounts paid from Mr. Lack's personal account to G&L. Petitioner paid no interest to Mr. Lack on the amounts Mr. Lack paid to G&L from his personal account.

During the years at issue Pamela Carter was employed by petitioner as Mr. Lack's secretary; however, she also performed duties for G&L such as recordkeeping and depositing payments into G&L's bank account. Mrs. Carter prepared revenue schedules that reflected payments G&L received for the use of the GIV and the King Air. The revenue schedules included the date of the payment and the amount paid but did not include details such as flight information, passengers, or the purposes of flights. Mrs. Carter also prepared

[*7] G&L monthly calendars on which she recorded King Air scheduled flights, GIV scheduled flights, plane maintenance, and pilot vacations. The monthly calendars did not include the business purposes of the flights or detailed passenger information.

G&L kept flight logs for both aircraft. Steven Cornell, the King Air's lead pilot, prepared the logs for the King Air, while the GIV pilots prepared logs for the GIV. The logs do not provide the business purposes of the flights or detailed passenger information. Neither Mrs. Carter nor Mr. Cornell had personal knowledge of the purpose of the King Air or GIV flights. During the years at issue Mr. Lack maintained an executive calendar on which he recorded personal appointments, personal business, and EL&L business. The executive calendar did not reflect the amounts of travel expenditures or detailed information regarding the business purpose of the expenditures.

At trial petitioner offered two noncontemporaneous documents to substantiate the business purposes for the travel expenses at issue. The documents were introduced as reconstructions of petitioner's trips and included each trip's date, destination, file number, and passengers. The first document was a log of petitioner's use of the King Air and the GIV, which Mrs. Carter prepared by referencing the flight logs and monthly calendars and speaking with Mr. Lack.

**[*8]** The second document was a similar log that Mr. Lack prepared in anticipation of trial by using his memory, executive calendars, and recollections from petitioner's employees.

## OPINION

### I.      Burden of Proof

The taxpayer bears the burden of proving by a preponderance of the evidence that the Commissioner's determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111,115 (1933).  Under section 7491(a), if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax and meets other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue.  The notice of deficiency contains an explanation of adjustments which states:  "To be allowed a deduction for any traveling expense, you must furnish information to prove: (a) the amount of the expense, (b) the time and place of the travel, (c) the business purpose of the travel, and (d) the time the expense was paid or incurred.  Because you have not established all of the above, we have disallowed your deduction."  We find that petitioner has failed to meet the requirements to cause the burden to shift to respondent.  However, respondent's amended answer raises as an alternative argument whether the expenses were

[*9] ordinary and necessary business expenses under section 162. We determined that respondent would carry the burden of proof to establish that the travel expenses were not ordinary and necessary business expenses for petitioner to the extent that petitioner meets the substantiation requirements of section 274(d) and the allegation in the amended answer differs from the substantiation issue raised in the notice of deficiency. Because of the relationship of Mr. Lack to G&L and petitioner, the question of whether payments to G&L by petitioner were ordinary and necessary business expenses is more complex than the question of whether the substantiation requirements have been met. In addition, Mr. Lack personally paid amounts that petitioner deducted. Nevertheless, the evidence which is contemporaneous to the events readily establishes that some of the travel expenses were for petitioner's business and have been substantiated in accordance with section 274(d). Respondent failed to produce any evidence that travel expenses directly involving petitioner's employees other than Mr. Lack were not ordinary and necessary. Respondent also failed to produce evidence that Mr. Lack's expenses for travel to various law conferences and petitioner-related legal proceedings were not ordinary and necessary. Expenses for this travel are therefore allowable as deductions. The remaining reported travel expenses in

[*10] dispute have not been substantiated in accordance with section 274(d) and are not allowable.

## II.     Travel Expense Deductions

Deductions are a matter of legislative grace, and taxpayers must maintain sufficient records to substantiate the amounts of their income and entitlement to any deductions or credits claimed.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Sec. 162.  Whether an expense is ordinary is determined by time, place, and circumstance.  Welch v. Helvering, 290 U.S. at 113-114.  Where a taxpayer reports a business expense but cannot fully substantiate it, the Court generally may approximate the allowable amount.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  However, we may do so only when the taxpayer provides evidence sufficient to establish a rational basis upon which an estimate can be made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

For certain kinds of expenses otherwise deductible under section 162(a), a taxpayer must satisfy the strict substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions.  The section 274(d)

**[*11]** substantiation requirements supersede the Cohan doctrine that we may estimate deductions where evidence is inadequate. Cohan v. Commissioner, 39 F.2d at 543-544; Sanford v. Commissioner, 50 T.C. 823, 827 (1968) (strict substantiation provision takes precedence over Cohan rule), aff'd, 412 F.2d 201 (2d Cir. 1969).

The heightened substantiation requirements of section 274(d) apply to travel expenses and are thus implicated here. To prove its entitlement to the travel expense deductions at issue, petitioner must present sufficient evidence supporting: (1) the amount of the expense; (2) the time and place of the travel; and (3) the business purpose of the expense. The degree of substantiation necessary to establish business purpose depends upon the facts and circumstances of each case, but contemporaneous documentation is deemed more credible than after-the-fact reconstructions. Sec. 1.274-5T(c)(1), (2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46018 (Nov. 6, 1985). However, where the business purpose is evident from the surrounding facts and circumstances, a written explanation of the business purpose will not be required. Sec. 1.274-5T(c)(2)(ii)(B), Income Tax Regs., supra.

**[*12]** A.     Ordinary and Necessary Business Expenses

Petitioner contends that we should presume there was a business purpose for all of the travel expenses it reported.  Petitioner argues that respondent bears the burden of proving they had no business purpose.  Petitioner's position is incorrect regarding the substantiation requirements of section 274(d).  Respondent argues that the travel expenses were not ordinary and necessary because petitioner was paying the obligations of Mr. Lack and the travel expenses were not reasonable in amount in relation to their purpose.  On the basis of the record we believe petitioner met the requirements of the regulations under section 274(d) for some of the expenses it deducted.  However petitioner also failed to substantiate portions of its deductions.  On many of the flights that generated the deductions, Mr. Girardi was the sole passenger.  Petitioner is not entitled to deduct expenses related to these flights as they were not clearly for petitioner's business and the contemporaneous records do not show the business purpose of the flights.  On other flights Mr. Lack and his family used the aircraft for non-EL&L business.

Petitioner also is not entitled to deduct expenses that it did not actually pay.  Petitioner admits that some of the expenses at issue were paid by Mr. Lack out of his personal funds.  Nevertheless, petitioner argues that it should be allowed to deduct those expenses because Mr. Lack paid them on petitioner's behalf as either

**[*13]** loans or capital contributions. We disagree. Petitioner has not presented any evidence demonstrating that it observed the formalities necessary for such a characterization contemporaneously or at any time before trial. See Sollberger v. Commissioner, T.C. Memo. 2011-78 (explaining that courts define a loan as an express or implied agreement where one person advances money to the other and the other agrees "to repay it upon such terms as time and rate of interest" and where there is "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment"), aff'd, 691 F.3d 1119 (9th Cir. 2012); see also Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000) (stating that factors relevant in assessing whether a transaction is a true loan are: "(1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan"), aff'g T.C. Memo. 1998-121. Likewise, there is no evidence in the record that the amounts forwarded by Mr. Lack were recorded as capital contributions when expended. We are

**[\*14]** disinclined to embrace after-the-fact, self-serving testimony as a substitute for actual contemporaneous evidence and documentation. Therefore, we reject petitioner's position regarding the deductibility of the payments which the firm did not actually make, specifically Mr. Lack's personal expenditures in accord with the obligations he himself undertook regarding G&L.

## B.    Substantiation of Travel Expenses

To substantiate its reported travel expenses, petitioner provided revenue schedules, monthly calendars, flight logs, and reconstructed analysis introduced through testimony. Additionally, petitioner attached schedules to its briefs which purport to summarize the evidence in the record. However, the schedules include flights that were not part of the reconstructed analysis and business purpose details that were not part of any evidence submitted at trial. Therefore, we will not consider these schedules as part of the record.

The relevant evidence reflects three categories of flights: (1) flights on which Mr. Lack and another EL&L employee were passengers; (2) flights on which Mr. Lack was the only EL&L employee passenger; and (3) flights on which neither Mr. Lack nor another EL&L employee was a passenger. We hold that petitioner is entitled to deductions for the expenses related to category (1) flights when the expenses were properly substantiated. We hold that petitioner is entitled

**[*15]** to deduct the expenses related to category (2) flights only when it is readily apparent that the flights were for EL&L business. We hold that petitioner is not entitled to deductions for any expenses related to category (3) flights because neither Mr. Lack nor another EL&L employee was a passenger and the flights had no discernable business purpose according to the contemporaneous records.

For many of the flights in categories (1) and (2), petitioner failed to meet the heightened expense substantiation requirements of section 274(d). Where the business purpose of a flight has not been established, the deductions are disallowed. Where a flight lacks supporting contemporaneous documents such as flight logs to substantiate the amounts of the expenses, the deductions are also disallowed.

In the appendix to this opinion we have summarized our holdings for all category (1) and category (2) flights. All expense deductions related to category (3) flights were disallowed, and therefore these flights were not included in the appendix. The appendix includes the date, destination, business purpose, aircraft, and flight hours for each properly substantiated flight. Where petitioner failed to properly substantiate the flight, it is noted accordingly. The GIV flights that were properly substantiated totaled 78.6 flight hours. The King Air flights that were properly substantiated totaled 191.1 flight hours. The GIV and the King Air are

[*16] charged out at approximately $5,500 and $2,500 per hour, respectively.

Therefore, the appropriate deduction for petitioner's properly substantiated travel

expenses during the years at issue is $910,050 ($286,500, $315,050, $206,250,

and $102,250 for tax years 2007, 2008, 2009, and 2010, respectively).

 C. Petitioner's Additional Arguments

Petitioner contends that this case arises under section 274(d)(4) relating to

use of listed property and therefore the substantiation requirements for the use of

listed property under section 1.274-5T(b)(6), Temporary Income Tax Regs., 50

Fed. Reg. 46016 (Nov. 6, 1985), apply.  Petitioner explains that the aircraft should

be considered listed property because of the phrase "payments under a lease for a

period of 30 days or more" used in section 280F(c)(2).  Petitioner suggests that

applying the travel expense regulations is more problematic because of their use of

"separate expenditures", "business days", and lack of guidance on Mr. Lack's

"dual use" of the aircraft.  We reject this position because petitioner has not

produced any evidence demonstrating that it met the requirements to characterize

its use of the aircraft as a lease or rental of property.

III. Accuracy-Related Penalty

Respondent determined that petitioner is liable for accuracy-related

penalties under section 6662(a).  Section 6662(a) and (b)(1) and (2) imposes a

[*17] 20% penalty on an underpayment of tax required to be shown on a return if the underpayment is attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax.

Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Section 6662(c) determines that "disregard" includes any careless, reckless, or intentional disregard.

Section 6664(c)(1) provides an exception to the accuracy-related penalty if it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Higbee v. Commissioner, 116 T.C. 438, 448 (2001); see sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner bears the burden of production with respect to a taxpayer's liability for accuracy-related penalties. See sec. 7491(c). To meet that

**[\*18]** burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 446-447. The taxpayer may meet this burden by proving that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.

Petitioner failed to establish reasonable cause for not keeping sufficient contemporaneous records showing important flight details and the business purpose of the travel. Petitioner also reported expense deductions for travel unrelated to its business. Therefore, we find petitioner's underpayments negligent and lacking reasonable cause or good faith. Accordingly, we sustain respondent's imposition of accuracy-related penalties under section 6662 for the years at issue.

In reaching our holdings herein, we have considered all arguments the parties made, and to the extent we did not mention them above, we conclude they are moot, irrelevant, or without merit.

**[*19]** To reflect the foregoing,

Decision will be entered under

Rule 155.

[*20]                                APPENDIX

| Date | Destination | Business purpose | Flight hours |
|------|-------------|------------------|--------------|
| 1/7/07 | Cabo San Lucas, Mex. | EL&L litigation | 6.4 (KA) |
| 1/30/07 | Ft. Lauderdale, Fla. | EL&L litigation | 9.9 (GIV) |
| 2/15/07 | Las Vegas, Nev. | Failure to substantiate | |
| 3/11/07 | Thermal, Cal. | Failure to substantiate | |
| 3/15/07 | Oakland, Cal. | Failure to substantiate | |
| 3/23/07 | Thermal, Cal. | EL&L litigation | 2.4 (KA) |
| 3/29/07 | Las Vegas, Nev. | EL&L litigation | 1.8 (KA) |
| 4/10/07 | Chicago, Ill. | IATL conference | 3.3 (GIV) |
| 4/14/07 | Chicago, Ill. | IATL conference | 5.6 (GIV) |
| 4/23/07 | Las Vegas, Nev. | Failure to substantiate | |
| 4/26/07 | Puerto Vallarta, Mex. | EL&L litigation | 8.0 (KA) |
| 5/10/07 | Thermal, Cal. | EL&L litigation | 1.1 (KA) |
| 5/24/07 | Thermal, Cal. | Failure to substantiate | |
| 6/6/07 | Minden, Nev. | EL&L litigation | 4.7 (KA) |
| 6/12/07 | Managua, Nicar. | Failure to substantiate | |
| 7/1/07 | La Paz, Mex. | Failure to substantiate | |
| 8/9/07 | Minden, Nev. | Failure to substantiate | |
| 8/24/07 | San Diego, Cal. | EL&L litigation | 2.5 (KA) |
| 8/29/07 | Puerto Vallarta, Mex. | EL&L litigation | 8.5 (KA) |
| 9/4/07 | Puerto Vallarta, Mex. | EL&L litigation | 8.8 (KA) |
| 9/7/07 | Las Vegas, Nev. | IATL conference | 3.5 (KA) |
| 9/14/07 | Thermal, Cal. | Failure to substantiate | |
| 9/20/07 | Oakland, Cal. | Failure to substantiate | |
| 9/21/07 | La Paz, Mex. | Failure to substantiate | |
| 10/17/07 | Scottsdale, Ariz./D.C. | EL&L litigation | 4.9 (GIV) |
| 10/25/07 | Oakland, Cal. | Failure to substantiate | |
| 10/26/07 | Las Vegas, Nev. | Failure to substantiate | |
| 11/21/07 | Thermal, Cal. | Failure to substantiate | |
| 11/25/07 | Thermal, Cal. | Failure to substantiate | |
| 12/16/07 | Teterboro, N.J. | IATL conference | 4.8 (GIV) |
| 12/27/07 | Cabo San Lucas, Mex. | EL&L litigation | 4.2 (KA) |
| 1/2/08 | Oakland, Cal. | EL&L litigation | 2.4 (KA) |
| 1/6/08 | Cabo San Lucas, Mex. | EL&L litigation | 6.6 (KA) |

| | | | |
|---|---|---|---|
| **[*21]** 1/15/08 | San Diego, Cal. | EL&L litigation | 1.1 (KA) |
| 1/18/08 | Las Vegas, Nev. | Conference speaker | 1.9 (KA) |
| 1/20/08 | Las Vegas, Nev. | Conference speaker | 2.0 (KA) |
| 2/2/08 | Phoenix, Ariz. | Conference speaker | 3.1 (KA) |
| 2/10/08 | Phoenix, Ariz. | EL&L litigation | 2.1 (GIV) |
| 2/17/08 | Minden, Nev. | Failure to substantiate | |
| 2/19/08 | Minden, Nev. | Failure to substantiate | |
| 3/12/08 | Carlsbad, Cal. | EL&L litigation | 0.9 (KA) |
| 3/13/08 | Oakland, Cal. | Failure to substantiate | |
| 3/20/08 | Thermal, Cal. | EL&L litigation | 1.2 (KA) |
| 3/22/08 | Thermal, Cal. | EL&L litigation | 2.4 (KA) |
| 4/10/08 | Thermal, Cal. | EL&L litigation | 1.7 (KA) |
| 4/18/08 | San Diego, Cal. | Conference speaker | 1.1 (KA) |
| 4/20/08 | Las Vegas, Nev. | Failure to substantiate | |
| 5/29/08 | Seattle, Wash. | EL&L litigation | 3.3 (KA) |
| 6/4/08 | Ketchikan, Alaska | EL&L litigation | 6.7 (GIV) |
| 6/6/08 | Reno, Nev. | Failure to substantiate | |
| 6/12/08 | Livermore, Cal. | Failure to substantiate | |
| 6/18/08 | Minden, Nev. | EL&L litigation | 4.9 (KA) |
| 7/2/08 | Sitka, Alaska | EL&L litigation | 3.6 (GIV) |
| 7/5/08 | Sitka, Alaska | EL&L litigation | 3.7 (GIV) |
| 7/24/08 | Portland, Or./Sitka, Alaska | EL&L litigation | 12.4 (KA) |
| 7/30/08 | Oakland, Cal. | EL&L litigation | 1.2 (KA) |
| 7/31/08 | Oakland, Cal. | EL&L litigation | 1.2 (KA) |
| 8/14/08 | Minden, Nev./Oakland, Cal. | Failure to substantiate | |
| 8/20/08 | Minden, Nev. | EL&L litigation | 2.4 (KA) |
| 8/25/08 | Denver, Colo. | EL&L litigation | 2.8 (KA) |
| 8/26/08 | Denver, Colo. | EL&L litigation | 2.8 (KA) |
| 8/29/08 | Las Vegas, Nev. | CAALA conference | 1.9 (KA) |
| 8/31/08 | Las Vegas, Nev. | CAALA conference | 1.9 (KA) |
| 9/3/08 | Seattle, Wash. | EL&L litigation | 4.6 (GIV) |
| 9/21/08 | Aspen, Colo. | IATL conference | 1.6 (GIV) |
| 9/24/08 | Aspen, Colo. | IATL conference | 1.8 (GIV) |
| 9/29/08 | San Diego, Cal. | EL&L litigation | 2.3 (KA) |
| 10/9/08 | Cabo San Lucas, Mex. | EL&L litigation | 6.3 (KA) |
| 11/12/08 | Cabo San Lucas, Mex. | Failure to substantiate | |
| 11/26/08 | Thermal, Cal. | EL&L litigation | 0.7 (KA) |

| | | | |
|---|---|---|---|
| **[*22]** 11/30/08 | Thermal, Cal. | EL&L litigation | 1.1 (KA) |
| 12/5/08 | Oakland, Cal. | EL&L litigation | 2.3 (KA) |
| 12/30/08 | Thermal, Cal. | EL&L litigation | 1.1 (KA) |
| 1/2/09 | Thermal, Cal. | EL&L litigation | 1.3 (KA) |
| 1/13/09 | Jackson, Miss./New Orl., La. | EL&L litigation | 3.1 (GIV) |
| 3/12/09 | Oakland, Cal./Minden, Nev. | Failure to substantiate | |
| 3/12/09 | Thermal, Cal. | EL&L litigation | 2.3 (KA) |
| 3/21/09 | Las Vegas, Nev. | EL&L litigation | 0.9 (KA) |
| 3/23/09 | Las Vegas, Nev. | EL&L litigation | 1.9 (KA) |
| 4/6/09 | San Diego, Cal. | EL&L litigation | 1.0 (KA) |
| 4/10/09 | Thermal, Cal. | EL&L litigation | 0.7 (KA) |
| 4/13/09 | Thermal, Cal. | EL&L litigation | 1.3 (KA) |
| 4/21/09 | Atlanta, Ga. | IATL conference | 3.8 (GIV) |
| 4/24/09 | Atlanta, Ga. | IATL conference | 4.4 (GIV) |
| 5/21/09 | San Diego, Cal. | EL&L litigation | 2.3 (KA) |
| 5/25/09 | San Diego, Cal. | EL&L litigation | 0.4 (KA) |
| 5/29/09 | Bandon, Or. | Failure to substantiate | |
| 6/11/09 | Livermore, Cal. | Failure to substantiate | |
| 6/16/09 | Sacramento, Cal. | EL&L litigation | 2.4 (KA) |
| 6/17/09 | Minden, Nev. | EL&L litigation | 2.3 (KA) |
| 6/21/09 | Minden, Nev. | EL&L litigation | 2.5 (KA) |
| 6/22/09 | Denver, Colo. | EL&L litigation | 3.7 (GIV) |
| 6/24/09 | Denver, Colo. | EL&L litigation | 5.6 (KA) |
| 7/2/09 | San Diego, Cal. | Failure to substantiate | |
| 7/4/09 | San Diego, Cal. | Failure to substantiate | |
| 7/16/09 | Minden, Nev. | Failure to substantiate | |
| 7/22/09 | Minden, Nev. | Failure to substantiate | |
| 7/24/09 | Oakland, Cal. | AAJ speaker | 2.4 (KA) |
| 7/27/09 | Oakland, Cal. | AAJ speaker | 2.1 (KA) |
| 9/12/09 | San Diego, Cal. | State bar | 1.2 (KA) |
| 9/24/09 | San Diego, Cal. | EL&L litigation | 1.1 (KA) |
| 9/25/09 | San Diego, Cal. | EL&L litigation | 1.1 (KA) |
| 10/2/09 | Oakland, Cal. | EL&L litigation | 2.2 (KA) |
| 10/15/09 | Oakland, Cal. | EL&L litigation | 2.3 (KA) |
| 12/3/09 | Los Cabos, Mex. | EL&L litigation | 6.4 (KA) |
| 12/16/09 | Oakland, Cal. | EL&L litigation | 2.3 (KA) |
| 12/17/09 | Las Vegas, Nev. | EL&L litigation | 3.5 (KA) |

| | | | |
|---|---|---|---|
| **[*23]** 3/11/10 | Oakland, Cal. | Failure to substantiate | |
| 3/31/10 | Thermal, Cal. | Failure to substantiate | |
| 4/8/10 | Phoenix, Ariz. | IATL conference | 3.0 (KA) |
| 6/9/10 | Minden, Nev. | EL&L litigation | 2.5 (KA) |
| 6/10/10 | Livermore, Cal. | Failure to substantiate | |
| 6/13/10 | Minden, Nev. | EL&L litigation | 2.4 (KA) |
| 7/1/10 | Santa Rosa, Cal. | Failure to substantiate | |
| 7/15/10 | Minden, Nev. | EL&L litigation | 2.7 (KA) |
| 7/21/10 | Minden, Nev. | EL&L litigation | 2.3 (KA) |
| 8/20/10 | Monterey, Cal. | IATL conference | 3.8 (KA) |
| 9/3/10 | Las Vegas, Nev. | Failure to substantiate | |
| 11/12/10 | Liberia, Costa Rica | IATL conference | 11.0 (GIV) |

| | |
|---|---|
| GIV flight hours | 78.6 |
| KA flight hours | 191.1 |